## E. W. BLISS CO. v. COLD METAL PROCESS CO.

### No. 7707.

Circuit Court of Appeals, Sixth Circuit.

March 8, 1939.

Howard J. Churchill and Louis E. Giles, both of New York City (Kwis, Hudson &

Kent, of Cleveland, Ohio, and Eugene V. Myers and Howard J. Churchill, both of New York City, on the brief), for appellant.

Howard F. Burns, of Cleveland, Ohio, and Walter J. Blenko, of Pittsburgh, Pa. (Stebbins, Blenko & Parmelee, of Pittsburgh, Pa., and Baker, Hostetler, Sidlo & Patterson, of Cleveland, Ohio), for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

To a bill of complaint filed below by the appellant, a manufacturer of rolling mills, praying for a decree under the Federal Declaratory Judgment Act, § 274 (d), Judicial Code, 28 U.S.C.A. § 400, declaring Steckel Patents Nos. 1,744,016, 1,744,017, 1,744,018 and 1,779,195, invalid and not infringed by the plaintiff, the appellee as defendant interposed a motion to dismiss on the ground that the allegations of the bill failed to state a controversy justiciable under the act. The District Court sustained the motion and dismissed the bill. This appeal brings into question not only the decree of dismissal but likewise an interlocutory order striking from the bill allegations that fraud practiced by the defendant in the Patent Office led to procuring the patents here involved.

The bill charges that the plaintiff had for ten years been engaged in the business of manufacturing and selling rolling mills of the type illustrated by its exhibits, had invested large sums of money in its business, and had acquired in connection with its mills valuable good will; that the defendant knew of its manufacture and sale since 1926; that it had publicly represented to purchasers and prospective purchasers and users that the mills of the plaintiff infringed its patents, and that its customers likewise infringed; that it had become difficult for the plaintiff to sell its mills in competition with the defendant because of such representations, and that it repeatedly had been required to guarantee that it would save its customers harmless on account of the alleged infringement; that it had advised the defendant that its patents were invalid and not infringed, but that the defendant had refused or neglected for a period of five years to bring suit against the plaintiff on its patents, and had continued to threaten the plaintiff, its customers and prospective customers, by reason of which the plaintiff had suffered damage: More specifically the bill charged that prior to the issuance of the patents the defendant had on June 20, 1927, entered into an agreement with the United Engineering & Foundry Company as to patent No. 1,779,195, subsequently issued in 1930, and claimed to be the basic patent of the group, under which United claimed an exclusive license; that a suit was brought by United against the plaintiff for infringement, in which the defendant was requested to join as plaintiff but refused and was cited as party defendant and requested to take control of the suit against the plaintiff; that it not only declined to do this but sought to have the suit dismissed, and brought suit against United in the Western District of Pennsylvania, Cold Metal Process Co. v. United Engineering Co., ).C., 9 F.Supp. 994, to enjoin United from prosecuting the suit, and after failure in the District Court secured an injunction from the Court of Appeals for the Third Circuit, 79 F.2d 666, which made it impossible for the present plaintiff to obtain an adjudication of the invalidity of Patent 1,779,195, and the freedom of the plaintiff from infringement thereof. Finally, the bill alleges that the plaintiff's mills do not infringe any valid claim of any of the four patents, that it has a right to manufacture them without interference, either by the defendant or its licensees, that each of the defendant's patents is invalid because of prior publication, prior public uses, and other reasons, and that there is an actual present controversy between the plaintiff and the defendant which is substantial and adversary in, character.

Pressed for greater particularity by a motion for a bill of particulars and an order based thereon, the plaintiff alleged inter alia that prior to the issuance of the patents the defendant had advised the steel trade that important claims covering four-high rolling mills would be granted to it on the Steckel applications, and that among those notified were a number of the plaintiff's customers; that because of such notice the plaintiff was obliged to extend its guaranty to cover any patents that might issue to Steckel; that thereafter the plaintiff attempted to make an arrangement with the defendant, to which the defendant replied that Beeghly, its president, proposed a settlement on the basis of $1,000,000 for all infringing mills outstanding, of which the plaintiff's proportion would doubtless be low; that prior to June 14, 1933, the

defendant again warned the steel trade, specifically charging many of the plaintiff's customers with infringement; that one such customer was the American Sheet & Tin Plate Company, a subsidiary of the United States Steel Corporation, and that following such warning the defendant in January, 1934, brought suit against the Tin Plate Company on the first three patents here in issue, and at the trial of the suit included certain mills that had been manufactured by the plaintiff which were charged to infringe; that in July, 1934, the defendant brought a second suit against the Tin Plate Company on the last patent, and therein twenty-nine of the plaintiff's mills were charged to infringe; that the plaintiff has lost orders for rolling mills to the amount of several hundred thousand dollars by reason of the defendant's charges of infringement.

The appellee contends that these allegations present no justiciable controversy which is capable of complete and definitive determination. Its principal patent claims, it says, are process claims, and since there is no allegation as to the manner of use of the plaintiff's apparatus by its customers, or as to the manner in which the plaintiff intends them to be used, there is no factual basis upon which infringement of the predominating process claims can be litigated. In respect of the apparatus claims, there are numerous limitations upon which no issue is tendered. Lacking such basis, it says it is impossible to litigate the question of their infringement. It contends further that a present actual controversy does not arise out of advice given by the defendant to its own customers and prospective customers many years before the filing of the bill, nor out of advice by its president in 1931 in response to a request for adjustment of differences, nor out of notices of infringement to or suits against the American Sheet & Tin Plate Company. In any event, it asserts, the District Court is vested with discretion to entertain a suit under the Declaratory Judgment Act, and its decree of dismissal should not be set aside except for an abuse of discretion; that since a prior suit against the plaintiff's customers, in which the plaintiff might have intervened, gave the plaintiff opportunity for adjudication of its alleged lack of infringement, the District Court exercised sound discretion in dismissing the bill. Furthermore, in view of a suit for infringement subsequently brought by the defendant against the appellant itself in Delaware, in which all issues here involved may be determined according to the usual practice of patent infringement suits, this court ought not to set aside the decree. Finally it is urged that the bill is without equity since the alleged charges of infringement were first made six years prior to the filing of the bill and no action was taken for twenty months after the Declaratory Judgment Act became effective.

In Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L. Ed. 617, 108 A.L.R. 1000, the Supreme Court recently restated the principles governing determination of the existence of a controversy in the constitutional sense, and the cases are there fully reviewed. The Declaratory Judgment Act is operative only in respect to such controversy, which must be one that is appropriate for judicial determination, distinguishable from a dispute of hypothetical or abstract character. It must be definite and concrete, touching the legal relations of parties having adverse legal interests and admitting of specific relief through a decree of a conclusive character as distinguished from an opinion advising what the law would be on a hypothetical state of facts, even though adjudication may not require the award of process, the payment of damages or the granting of an injunction. Tested by these rules and by the application made of them to the facts in the Aetna case, there is here a justiciable controversy. The defendant asserts that the plaintiff's structures infringe patents which it owns and which it claims are valid. The plaintiff denies infringement and has invited suit against it upon the patents without response. It denies the validity of the patents, and has so notified the defendant at least by its bill if not prior thereto. The parties stand in adversary positions in respect to legal rights and obligations. Their differences are concrete and not hypothetical or abstract. It is of no moment in the determination of the character of the relief sought that the suit is brought by the alleged infringer instead of by the owner. Edelmann & Co. v. Triple-A. Specialty Co., 7 Cir., 88 F.2d 852.

Circumstances may contain all of the elements out of which a controversy may arise and yet there will be no controversy if one claiming a right or interest invaded by another does not choose to assert his right. Likewise may there be circumstances pointing to a possible controversy in the past, without present actuality, by reason of abandonment or change of position by

adversaries. But these speculations may not be indulged in in respect to the present situation of the parties. While the defendant made public claims of infringement many years before the filing of the bill, it has now charged customers of the plaintiff with infringing its patents through the instrumentality of mills purchased from the plaintiff and has brought suits against them. Since the filing of the bill it has brought suit for infringement against the plaintiff itself. All doubts as to the existence of a present controversy are now dispelled. Disputes sufficiently real and concrete to warrant patent infringement suits between adversaries or those in privity with them are sufficiently concrete and real to sustain a suit under the Declaratory Judgment Act.

■ Little consideration need be given to the charge of inequity in a delay of twenty months after the effective date of the Declaratory Judgment Act before pursuit by the plaintiff of the remedy therein provided. One of the purposes of the Act was to provide a remedy to the challenger of a right the assertion of which injures him, yet who prior to the enactment of the statute was unable to secure an adjudication of his challenge until his adversary took the initiative. It is not to be assumed that the right of challenge is lost when the challenger invites and awaits expected enforcement of the asserted right. Certainly one who delays for six or more years to vindicate his patents, after knowledge and assertion of their infringement, may not complain that one who assails their validity has waited twenty months before seeking adjudication.

■ It has frequently been said that there is a discretion in the court to entertain a suit for declaratory judgment since the statute does not specifically command action but merely provides that the court "shall have the power" to declare rights and relations. Even so, this discretion, if it resides in the courts, is a judicial discretion and must find its basis in good reason. Aetna Casualty & Surety Co. v. Quarles, 4 Cir., 92 F.2d 321. There is no occasion upon the present record to determine whether discretion was exercised, and if so abused. The court dismissed the proceeding upon the sole ground that the bill did not present a concrete case admitting of an immediate and definitive determination under the statute.

■ In view of the Delaware suit begun by the appellee against the appellant since entry of the decree below, it is now urged upon us that in our discretion we affirm the decree on the ground that the issues may be more definitely determined in the infringement suit according to usual and customary procedure. This we must decline to do. Aside from adherence to the familiar rule that the court which first acquires jurisdiction of a controversy should be permitted to conclude it, we recognize that it has been the thought of the proponents of declaratory judgment statutes, State and Federal, that the alternative remedy provided should not be foreclosed by the existence of other remedies equally effective, a concept which has now found expression in Rule 57 of the Rules of Civil Procedure for the District Courts of the United States, 28 U.S.C.A. following section 723c, adopted by the Supreme Court pursuant to the act of June 19, 1934, Chapter 651, 28 U.S.C.A. §§ 723b, 723c. This provides: "The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." While Rule 57 was not in force at the time of the decree below, it derives from experience with declaratory judgment statutes in the States. Another consideration leads to our conclusion. The appellee having refused to bring suit for infringement of its patents against the appellant for more than six years, and having restrained the one suit against the appellant involving its patents, and having filed its own suit only after declaratory relief was sought and an appeal taken from its denial, the inference is inescapable that it has little enthusiasm for a judicial test of the validity of its patents or the fact of their infringement by the appellant. Upon affirmance of the decree below, opportunity would be afforded to avoid the issue by dismissal, if it may, of its infringement suit, or delay in pressing it, if it may not, to the appellant's continued injury.

■ With respect to charges that the present suit is collusive, was initiated to harass the defendant, and kindred charges, we need say no more than was said by the court in Aetna Life Insurance Co. v. Haworth, supra: "We have no occasion to deal with questions that may arise in the progress of the cause, as the complaint has been dismissed in limine." [300 U.S. 227, 57 S.Ct. 465.] Such questions are not now before us.

110

Since the case is to be tried, it becomes necessary to rule upon the order of the court striking from the bill of complaint allegations that the patents there recited are invalid "because of fraud and deception in the securing of said patents." The, rule is well settled that a private litigant cannot by bill in equity have a patent declared void on the ground that it had been fraudulently obtained. Mowry v. Whitney, 14 Wall. 434, 20 L.Ed. 858; United States v. American Bell Telephone Co., 128 U.S. 315, 368, 9 S.Ct. 90, 32 L.Ed. 450. The appellant relies upon what was said in Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 54 S.Ct. 146, 78 L.Ed. 295, to the effect that the equitable powers of the court can never be exerted in behalf of one who has acted fraudulently or who by deceit or unfair means has gained an advantage. This is but another expression of the familiar equitable maxim. The defendant has not sought the aid of a court of equity. It is brought into it against its will, and until it seeks affirmative relief the maxim may not to it be applied. The order of the District Judge striking the allegations of fraud from the bill of complaint is affirmed, without prejudice, however, to the consideration of proposed amendments to the bill in this respect if by answer the defendant seeks affirmative equitable relief.

Decree reversed and cause remanded for trial in conformity herewith.