**WESTERN ELECTRIC CO., Inc., v. HAMMOND.**

No. 1719.

District Court, D. Massachusetts.

April 30, 1942.

718

Harrison F. Lyman and William R. Woodward, both of Boston, Mass. (Fish, Richardson & Neave, of Boston, Mass., of counsel), for plaintiff.

Charles O. Pengra and Richard Wait, both of Boston, Mass. (Choate, Hall & Stewart, of Boston, Mass., and Nathaniel L. Leek, of New York City, of counsel), for defendant.

Francis M. Shea, Asst. Atty. Gen., Edmund J. Brandon, U. S. Atty., of Boston, Mass., and Paul P. Stoutenburgh and T. Hayward Brown, both of Washington, D. C., amici curiae.

WYZANSKI, District Judge.

The defendant moves to dismiss the plaintiff's action for a declaratory judgment. His position is that the plaintiff has not stated a cause of action under the Declaratory Judgment Act, Section 274d of the Judicial Code, Act of June 14, 1934

c. 512, 48 Stat. 955, U.S.C.A. Tit. 28 § 400, because, in the defendant's view, there is between these parties no case of actual controversy; and that even if a cause of action has been stated, this court as a matter of discretion should refuse to exercise its power to issue a declaratory judgment.

For the purpose of understanding the motion the complaint can be briefly summarized.

Western Electric has manufactured for and sold to the United States radio apparatus. The company says that "if" this apparatus embodies the patents of Hammond, it has the necessary license. Reliance is placed upon a license agreement made in 1923 by Hammond with Radio Corporation; contracts between Radio Corporation and the American Telephone and Telegraph Company; and the alleged extension of the benefits of those contracts to Western Electric. On the other hand, according to the complaint, Hammond claims that there were exceptions in the 1923 agreement reserving to himself and another the right to sell to the Government, and that in any event the 1923 agreement does not permit of a sublicense giving Western Electric the right to sell to the Government. He has given Western Electric and the Government notice of his position, and in January, 1941, he filed, and now has pending, against the United States in the Court of Claims two petitions alleging infringement and seeking compensation. Western Electric alleges that Hammond's notices have interfered with its business and states that in connection with some sales it has given the Government agreements to hold it harmless for any liability.

Western Electric seeks a judgment declaring that under the 1923 agreement it has a sublicense to sell to the United States the apparatus covered by that agreement, and prays for an injunction to restrain Hammond from notices and interferences of the type mentioned in the complaint.

■ Hammond's motion to dismiss opens with two points which can be disposed of summarily. He says that in its complaint Western Electric fails to show that it was a party or privy to the license agreement of 1923 and fails to disclose the detailed basis upon which a claim of privity would be predicated. These points are without merit: Paragraphs 3, 4 and 5 of the complaint allege the derivation of Western Electric's rights in detail sufficient to conform to Rule 8(a) (2) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

■ Hammond next says that the complaint fails to state a cause of action because Western Electric, instead of admitting without qualification that its apparatus embodies Hammond's patent, merely alleges that the company has a license to sell the "apparatus *if* it embodies the alleged inventions patented" by Hammond (par. 11). Hammond argues that since Western Electric comes to this court seeking a judgment declaring only its rights as licensee and does not here present, as did the plaintiffs in Grip Nut Co. v. Sharp, 7 Cir., 124 F.2d 814; Treemond Co. v. Schering Corporation, 3 Cir., 122 F.2d 702; E. W. Bliss Co. v. Cold Metal Process Co., 6 Cir., 102 F.2d 105 and similar cases, issues as to the validity or infringement of a patent, Western Electric must unreservedly declare its reliance upon the license. Otherwise, so the argument runs, Western Electric shows no adequate interest in the only matter before the court, the license agreements, and, therefore, does not present a case of actual controversy in which this court has power to enter a declaratory judgment.

That point is not well taken. Unlike the plaintiff in Ohio Casualty Insurance Co. v. Marr, 10 Cir., 98 F.2d 973, Western Electric has unequivocally pleaded all the operative facts. It has then set forth Hammond's claim of patent infringement and alleged that, under one view of the application of the patent law to the facts, the license agreement is an answer to the claim. That is enough to show that with respect to the license agreement there is a substantial, immediate and real controversy between parties before the court. Merely because it is convenient for Western Electric to put its legal contentions in hypothetical form it does not follow, and indeed it is not true, that the underlying facts are hypothetical or are alleged hypothetically. The operative facts in the case at bar are alleged with certainty, only questions of law are stated alternatively. This plaintiff's position here may be compared with the plaintiff's position in Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 271, 61 S.Ct. 510, 85 L. Ed. 826. Here the plaintiff alleges a license but does not admit that his apparatus falls within the license; there the plaintiff alleged an insurance policy but did not admit that the collision fell within the policy. For other somewhat similar situa-

tions see Treemond Co. v. Schering Corporation, supra, and Borchard, Declaratory Judgments, 2d Ed. 1941, pp. 807, 808.

Hammond then contends that the complaint fails to state a cause of action under the Declaratory Judgment Act for another reason: the parties have no adverse legal interests and so there is no case of actual controversy. The argument is threefold.

Western Electric, it is said, does not state a case of unfair competition by Hammond. The complaint alleges that Hammond gave to Western Electric and to the Government merely informative, not malicious or harassing, notices of his claim. Under well-settled principles that involves no tort. United States Galvanizing & Plating Equipment Corp. v. Hanson-Van Winkle, etc., Co., 4 Cir., 104 F.2d 856, 861, 862; Emack v. Kane, C.C.N.D.Ill., 34 F. 46; Man-Sew Pinking Attachment Corp. v. Chandler Mach. Co., D.C.Mass., 33 F.Supp. 950, 956; American Law Institute, Restatement of Torts, vol. IV § 773.

More significant, Hammond, it is said, could have no cause of action against Western Electric. The effect of the Act of July 1, 1918, c. 114, 40 Stat. 705, U.S. C.A. Tit. 35 § 68, is to relieve Western Electric not only of all monetary liability to Hammond for infringement involved in sales to the Government (Richmond Screw Anchor Company v. United States, 275 U. S. 331, 48 S.Ct. 194, 72 L.Ed. 303) but also of the risk of injunction on account of that infringement. Broome v. Hardie-Tynes Manufacturing Co., 5 Cir., 92 F.2d 886, 888. In so far as Sperry Gyroscope Company v. Arma Engineering Co., 271 U.S. 232, 46 S.Ct. 505, 70 L.Ed. 922 appears to preserve some vestigial liability sufficient to support a cause of action by Western Electric against Hammond, Hammond says the case must be regarded either as overruled by subsequent authority or as distinguishable on the ground that the manufacture there involved may have occurred in part prior to July 1, 1918.

Moreover, Hammond cannot even reach Western Electric indirectly through the contracts of indemnity the company has given the Government. If the contracts are valid under the 1918 Act, which Hammond denies, they, unlike the indemnification contract involved in Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826, could never be reached by Hammond and applied to his claim because the contracts are Governmental assets which have not been included within the limited scope of the Government's consent to be sued in the Court of Claims. Cf. Federal Housing Administration v. Burr, 309 U.S. 242, 250, 251, 60 S.Ct. 488, 84 L.Ed. 724. Indeed they could not be included without thwarting the policy of the 1918 statute and without expanding the jurisdiction of the Court of Claims.

The answer to this threefold contention is no more difficult legally than it is practically. In terms of practical consequences it is obvious that there is here a controversy between adverse interests: Hammond has a claim against the United States for patent infringement; that conflicts with Western Electric's interests in selling apparatus to the United States and in avoiding liability to the United States on the indemnity contracts. In terms of legal theory it is also plain that there is a controversy between parties having adverse legal interests: Hammond is deliberately interfering with Western Electric's advantageous business relations; the injury to Western Electric is not tortious because Hammond has a privilege to inflict the damage (see Holmes, Privilege, Malice and Intent, 8 Harvard Law Review 1, American Law Institute, Restatement of Torts, vol. IV § 773); but the interests of the parties have a legal root and are adversary. In this aspect the case at bar resembles Hofmann, Inc., v. Knitting Machines Corp., 3 Cir., 123 F.2d 458, 460. There, as here, a manufacturer, not itself liable for infringement, sought a declaratory judgment against a patentee who had informed the manufacturer's customers that the articles they had bought infringed the patent. The Third Circuit held that a good cause of action was stated. In both that case and this the total situation shows a sufficient nexus between the conflicting legal claims of the plaintiff and the defendant to constitute a case or controversy both within Section 2 of Article III of the United States Constitution and within the Declaratory Judgment Act. There is no need to isolate each characteristic of this case and match it in turn against the colored adjectives repeated with ritualistic fervor in each of the leading cases on declaratory judgments. Cf. Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240, 241, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000.

Hammond's next point is that it is against the policy of the Act of July 1, 1918, as explained by its sponsors (see Richmond Screw Anchor Company v. Unit-

ed States, 275 U.S. 331, 342–344, 48 S.Ct. 194, 72 L.Ed. 303), for a United States District Court to decide a controversy arising out of a sale by a manufacturer to the United States of apparatus alleged to infringe a patent. This argument misconceives the policy of that act. The statutory policy was to remove impediments to the Government's procurement of patented articles. The statutory device was to transfer from the company manufacturing for the Government to the Government itself any liability for patent infringement. The effect of the device was to remove fears of manufacturers which had impeded sales to the United States.

Allowing a suit for a declaratory judgment in the case at bar will not frustrate but will further the policy of the 1918 Act. This litigation is brought to remove a cloud a patentee has placed upon the plaintiff's right to manufacture apparatus for the United States. Moreover, this suit is a way (and, if Hammond were right on his point about the indemnity contracts being invalid, the only way) by which the plaintiff proves to the United States it takes no risk in buying the plaintiff's goods. Therefore, like the statute, this litigation seeks to remove obstacles hindering sales to the United States. If this conclusion were otherwise doubtful, it is supported by the fact that the United States as amicus curiae has filed in the instant case a brief supporting the plaintiff's prayer that the court issue a declaratory judgment.

■ Hammond suggests that this answer overlooks the point of mutuality of relief. He says that as patentee he would be barred from suing for a declaratory judgment on the license and therefore the manufacturer should likewise be barred. Hammond's premise may be wrong. Perhaps the 1918 Act does not in any way preclude a suit upon a license. Newport News Shipbuilding & Dry Dock Co. v. Isherwood, 4 Cir., 5 F.2d 924, 933, 934. But, regardless of Hammond's right to sue Western Electric for a declaratory judgment or other relief, his suggestion is unsound. Mutuality of relief has no place in the law of declaratory judgments. Hofmann, Inc., v. Knitting Machines Corp., 3 Cir., 123 F.2d 458, 460. That ghost which formerly throve in the equity jurisdiction should not be allowed to spread alarm in this new jurisdiction.

■ I now come to the aspect of the case which has most troubled me. In de-termining whether to entertain a suit for a declaratory judgment, I have a limited judicial discretion. Mutual Life Insurance Co. of New York v. Krejci, 7 Cir., 123 F.2d 594, 596; E. W. Bliss Co. v. Cold Metal Process Co., 6 Cir., 102 F.2d 105.

There are here some factors that favor the exercise of this court's jurisdiction and which at first impression seemed to me decisive. As I have already said, the policy underlying the Act of July 1, 1918, would be aided by this suit. Western Electric and perhaps the Government and even Hammond would benefit from the prompt disposition which the last sentence of Rule 57 of the Rules of Civil Procedure suggests that this court should make of declaratory judgment suits. But I hesitate to attach too much weight to the point of expedition for there is in the complaint at bar no allegation that there would be unreasonable delay in the Court of Claims and no allegation that these parties could try the case in this court promptly.

A more important point is that Western Electric, which bears the ultimate risk of financial loss, will be a party to the controversy in this forum and will have the usual rights of a party to file pleadings, examine witnesses, present briefs and participate in the conduct of the trial. In the Court of Claims Western Electric will not be allowed to intervene. Waite v. United States, 57 Ct.Cl. 546. There it is dependent upon the grace of the Attorney General for any part in the effective and prompt preparation and presentation of the case. However, this point is blunted by the admission of counsel at the bar that Western Electric expects to be accorded by the Attorney General the manufacturer's now customary privilege of handling in full cooperation with the Government, and with the manufacturer's counsel in an important role, the litigation begun by Hammond in the Court of Claims.

I turn to the factors which militate against the exercise of this court's jurisdiction to entertain a suit for a declaratory judgment.

■ Hammond makes much of the points that he brought his suit in the Court of Claims before Western Electric brought its suit here; that his suit will dispose of all the issues of license, patentability and infringement, whereas this suit will dispose of only the license issue; and that, unless I were prepared to enjoin the prosecution of the suit in the Court of Claims (and

thus delay the United States which is not a party to this suit) I should be inviting a race of diligence between two trial courts of the United States. These points, however persuasive they may be, are not conclusive. Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 271, 272, 61 S.Ct. 510, 85 L.Ed. 826; Hofmann, Inc., v. Knitting Machines Corp., 3 Cir., 123 F.2d 458; second sentence of Rule 57 of the Rules of Civil Procedure; Borchard, Declaratory Judgments, 2d Ed. 1941, pp. 817, 818.

■ On these points the facts, if not the opinion, of the Maryland Casualty case are squarely against Hammond. The Supreme Court of the United States allowed the Maryland Casualty Company to maintain a suit in the United States courts for a judgment declaring it had no contractual responsibility to defend or act as surety in an automobile collision case theretofore brought in the Ohio state court. The Supreme Court was not deterred by any of the following factors: that the tort suit in the Ohio state court preceded the declaratory judgment suit in the United States court; that the declaratory judgment suit raised only questions of contractual and not questions of tort liability; that if the Maryland Casualty Company lost its suit in the United States courts on the contract, it would be required to meet in the Ohio state court the admittedly quite different tort issues arising out of the collision of two automobiles; that the cases in the two courts might well be proceeding simultaneously since the United States Court could not enjoin the prosecution of the suit in the state court; and that the Maryland Casualty Company's prayer for a judgment declaring that it was under no obligation to defend the Ohio suit was apparently raising a moot issue since before the United States Court could decide the issue the Ohio litigation would probably be well under way and immune from interference. If that case is to be taken at face value it stands for the proposition that a declaratory judgment suit may be entertained regardless of priority, regardless of whether it solves all the issues which are in a cognate case pending in another court, regardless of whether it merely adds to the volume of litigation a second case without even delaying the first case and regardless of whether part of the relief sought in the declaratory judgment case is made moot by the inability of the second court to enjoin the prosecution of the case in the first court.

Whatever may be said of the Maryland Casualty case, and the adequacy of the consideration it received, particularly in the absence of any appearance in the Supreme Court on behalf of the respondents, it does not govern this case. There is, it is true, a superficial resemblance which at first impressed me: if the plaintiff wins the declaratory judgment suit the same issue does not have to be re-tried in a second case. For I assume that if Western Electric prevails here by proving that it has an applicable license, the judgment of this court will be an estoppel available to the United States against Hammond in the Court of Claims, and nothing will be left to litigate. General Chemical Co. v. Standard Wholesale Phosphate, etc., Works, Inc., 4 Cir., 101 F.2d 178, 179, 183. Cf. Kessler v. Eldred, 206 U.S. 285, 27 S.Ct. 611, 51 L. Ed. 1065. Contra: Wenborne-Karpen Dryer Co. v. Dort Motor Car Co., 6 Cir., 14 F.2d 378.

■ But there is a critical and determinative difference. In the Maryland Casualty Company case, if the plaintiff lost, just as if he won, the issue could not be re-litigated in another forum. That is not so in the present situation. If in this court Hammond should successfully answer Western Electric's contention that Hammond licensed Western Electric to sell to the United States, nothing would have been gained. The United States (acting through the Attorney General and even aided by Western Electric's counsel) remains free to present to the Court of Claims exactly the same contention; and that court as well as this will have to pass on the contention. This is so because the United States is not now, and cannot be made without its consent, a party in this court, and because the United States would not be bound by a decision adverse to Western Electric rendered after the United States acquired its interest in the apparatus. See Carroll v. Goldschmidt, 2 Cir., 83 F. 508, 509; General Chemical Co. v. Standard Wholesale P. & A. Works, Inc., 4 Cir., 101 F.2d 178, 181.

■ It is obviously unfair to subject Hammond without subjecting Western Electric to the hazard of two trials of the same issue. And it is undesirable to "clutter the courts" with two proceedings when all the issues have already been raised in one. Borchard, Declaratory Judgments, 2d Ed., 1941, p. 818. Perhaps these considerations would not be controlling if Western Electric were to be denied the equivalent

of its day in court. But such equivalence is just what Western Electric already has. In effect, it is now seeking not one but two days in court. Although Western Electric cannot technically intervene in the Court of Claims, it has already begun to exercise approximately the same role in the proceedings as if it were allowed to intervene. The Attorney General is now permitting cooperation by Western Electric's counsel in the preparation and presentation of the case in the Court of Claims. To be sure, the same privilege is being extended to other manufacturers whose products, like those of Western Electric, are alleged to infringe Hammond's patent and whose products are involved in the same suit in the Court of Claims. But sharing with others the privilege does not destroy it any more than sharing with others a right of intervention would destroy that right. Cf. Automotive Equipment v. Trico Products Corp., D.C.W.D.N.Y., 11 F.Supp. 292, 294.

Western Electric's counsel draws attention to the cases of Alfred Hofmann, Inc., v. Knitting Machines Corp., 3 Cir., 123 F.2d 458 and E. W. Bliss Co. v. Cold Metal Process Co., 6 Cir., 102 F.2d 105, 108. In each of those cases, after the patentee had brought suit against the manufacturer's customer for infringement, the manufacturer was allowed to maintain a suit for a declaratory judgment against the patentee. However, in neither of those cases had the manufacturer exercised any role formal or informal in the earlier infringement suit. Moreover, in the Bliss case the precise issue was whether the trial court had statutory power to issue a declaratory judgment, not whether it had discretion to refuse to exercise that power (page 109 of 102 F.2d, col. 1, last sentence). Thus those cases do not preclude my exercising discretion to refuse to entertain this suit which involves matters already in issue in another court where Hammond is a party of record and Western Electric has already participated informally. In answer to the objection that in the Court of Claims Western Electric is not a formal party, it may be noted that in this court the United States is not a formal party but is standing aside in the hope that it may gain and with the certainty that it cannot lose by any judgment that this court enters.

To avoid the hardship of subjecting Hammond and the courts to the possibility of two trials, it would be suitable either to stay the pending case (Moore's Federal Practice, vol. I, pp. 236–238 and supplement; Mallow v. Hinde, 12 Wheat. 193, 198, 199, 6 L.Ed. 599) or to dismiss the complaint. United States Fidelity & Guaranty Co. v. Koch, 3 Cir., 102 F.2d 288, 294; Staley Elevator Company, Inc., v. Otis Elevator Company, D.C.N.J., 35 F.Supp. 778, 780. Cf. Milwaukee Gas Specialty Co. v. Mercoid Corp., 7 Cir., 104 F.2d 589, 592. See Borchard, Declaratory Judgments, 2d Ed., 1941, p. 818. I have determined to dismiss the complaint rather than stay the proceedings in order to give Western Electric an opportunity to seek in the Circuit Court of Appeals a review, if desired, of my order. However, in dismissing the complaint I do so without prejudice to the right of Western Electric to file a new complaint if Hammond discontinues his suit in the Court of Claims.

Motion to dismiss granted.