**PENN ELECTRIC SWITCH CO. v. UNITED STATES GAUGE CO.**

No. 7872.

Circuit Court of Appeals, Seventh Circuit.
June 19, 1942.

James A. Hoffman and Strauch & Hoffman, all of Washington, D. C., and L. B. Mann and Mann, Brown & Cox, all of Chicago, Ill., for appellant.

W. P. Bair, Will Freeman, and Bair & Freeman, all of Chicago, Ill., for appellee.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

The plaintiff brought this suit for a declaratory decree. It sought a judicial declaration on the disputed validity and infringement of patent No. 1,972,815. The patent is owned by defendant, who, it is asserted, was threatening plaintiff's customers with infringement suits because of alleged infringement by plaintiff's product of claim 5 of said patent. Plaintiff prayed a decree which would hold said claim 5 invalid and also non-infringed by its product, which was an "automatic control device."

Defendant objected to the jurisdiction of the United States District Court for the Northern District of Illinois, wherein the suit was brought. Its motion to quash service and dismiss the suit raised two questions, both of which were ruled against it.

As a basis of this motion defendant alleged and, by accompanying affidavits, endeavored to prove that it was not an inhabitant of the district wherein the suit was brought; that the offices maintained by it in the city of Chicago were not to make sales contracts, to grant credit, or perform other corporate acts, but were merely to receive orders which were forwarded to its principal office in the city of New York. It likewise argued that the venue of a declaratory judgment suit was fixed by Sec. 51 of the Judicial Code, 28 U.S.C.A. § 112, and the necessary jurisdictional facts were absent in the instant case, to give the District Court jurisdiction.

As a second ground of assault on the court's jurisdiction, it argues that jurisdiction should be refused because of a suit brought by defendant for infringement of this same patent (and same claim) against a customer of plaintiff's, in the District Court of Delaware prior to the commencement of the instant suit.

Defendant's motion was denied, whereupon it filed an answer and counterclaim. Through its counterclaim defendant sought a decree sustaining the validity of the patent and its infringement by plaintiff's product, and an injunction to restrain further infringements.

The trial of the suit on its merits resulted in a decree for the plaintiff. The court adjudged defendant to be the owner of patent No. 1,972,815; found claim 5 of said patent to have been infringed; but held it invalid. It dismissed the defendant's counterclaim for want of equity.

This appeal is from said decree.

Without discussion or elaboration of our views we hold:

■ Plaintiff's right to bring suit for a declaratory decree was not barred by the pending infringement suit instituted by the defendant against one of plaintiff's customers in Delaware. Borchard, Declaratory Judgments, pages 817-819; Bliss Company v. Cold Metal Process Co., 6 Cir., 102 F.2d 105. In the instant suit the parties were not the same. The plaintiff was not a party to defendant's Delaware suit. Certain affirmative relief, obtainable only on a counterclaim filed by plaintiff, could not be granted in the Delaware suit in which plaintiff was not a party.

■■ Moreover, there was no jurisdictional obstacle to the bringing, or to the maintenance of a suit for a declaratory decree (growing out of an alleged erroneous assertion of validity and infringement of a claim of a patent), based on the pendency of a patent suit, on the same patent and claim, between the same parties, in another court having jurisdiction of the infringement suit and of the parties. The granting of a declaratory judgment lies in the sound discretion of the trial judge.

In such a situation one court may, if the facts warrant it, stay the other suit by ordering the parties before it to take no further steps in the second suit. Such motion to stay, however, is addressed to the court's discretion, not to its jurisdiction. The soundness of the exercise of its discretion may, no doubt, also be reviewed, but only as it presents a question of the proper exercise of judicial discretion.

Disposition of a motion addressed to the court's discretion depends solely upon the facts in each case. A long delayed suit for

alleged infringements of an alleged valid patent, after a somewhat extensive attack on customers,—a sort of a guerrilla warfare,—does not appeal to a court of equity, even though the infringement suit was brought before the declaratory judgment suit was begun.

We are, however, not here reviewing a case of alleged abuse of discretion. We are considering a ruling on a motion to dismiss, for want of jurisdiction. We affirm the action of the District Court in refusing to dismiss the suit.

█ The motion to quash the service was also properly denied, because, on the facts shown, defendant was subject to service of process in Illinois. Defendant was licensed to do business in Illinois. It maintained a place of business in Chicago, which, under the facts, was "a regular and established place of business." The status of its place of business was recently considered by us in the case of James P. Marsh, a corporation, v. United States Gauge Co., 7 Cir., 129 F.2d 161, decided June 11, 1942.

We come now to the merits of the patent which covers an "Automatic Control Device," which is used largely for "automatically maintaining a suitable volume of air * * * in pressure tanks for water * * * to force the water * * * through surface pipes or distributing conduits associated therewith at predetermined pressures."

The District Court found plaintiff infringed the patent. It also found, however, that the claim (No. 5) in issue was invalid in view of the prior art in this field, which was crowded. The narrow and single issue of validity, the District Court met squarely. It conceded the combination was novel, but patentable novelty, it could not find.

This brings us then to the vital question of this appeal.

Is claim 5 of the patent valid? It reads:

"In automatic air volume control comprising

(a) a fitting provided with means to detachably secure it in an opening in a tank,

(b) a passage in said fitting that is normally open to atmosphere at one point and designed for communication with a conduit leading to means arranged to supply fluid to said tank,

(c) a second passage in said fitting opening into the interior of the tank at one end and arranged adjacent the opposite end to receive a pressure gauge,

(d) a valve to control the flow of air through said first named passage,

(e) a float arm mounted in said fitting,

(f) an elongated float secured to said arm with its length extending in the direction of the length of the arm, said float being of a diameter sufficiently small to permit it to be entered in a straight line through said opening in the tank,

(g) means to cause said arm to actuate said valve,

(h) and a flexible wall surrounding the float arm and extending between said arm and fitting and rigidly secured to said arm and fitting to seal the opening in the fitting through which said arm extends, without imposing substantial resistance to the actuation of said valve as said float moves in response to changes of liquid level in said tank, and bends said wall laterally."

Prior art cited and relied upon by court and counsel include White Patent, No. 588,305; Short Patent, No. 974,997; Mohr Patent, No. 1,549,786; Hombach Patent, No. 1,587,728; and Hastings Patent, No. 1,612,017.

Special reference is to McCabe, Hutt, and Corcoran (Patents Nos. 1,561,474; 1,624,736; 1,894,367). The era covered by these patents is from 1880 to 1933, and includes 23 patents. The last dated patent in the list is dated October 25, 1925. Defendant's patent was before the Patent Office six years and issued September 4, 1934, upon application filed five days after the Corcoran application. Much relied upon, and justifiably we believe, was an apparatus produced by plaintiff in 1927.

The District Court rejected plaintiff's non-infringement contention and proceeded directly to the issue of validity, in the course of which it observed:

"Counsel for the plaintiff points out what the evidence shows, namely, that the plaintiff was the first to develop an air volume control device for water storage tanks, which was automatic and went into commercial production.

"To the court, the problem before the persons working in this field, if there was a problem, was that of carrying a force or energy from a float within a tank, which is under pressure, to a valve outside of the tank, without permitting leakage."

In conclusion the court said:

"The court is not inclined to say that there can be found in any of the devices in the prior art the exact combination found in claim 5; but it does say, and holds, that the disclosures of claim 5 do not exhibit inventive genius over what was made manifest to the world by the disclosures of the prior art. * * *

"The court does not think, in view of the state of the art, that there was any genius used, * * * Claim 5 of the patent in suit is invalid."

There is a disturbing question which the parties have failed to discuss. Plaintiff has argued at length, and successfully, to show that the prior art anticipated Anneren, the inventor, defendant's assignor. It seems to have overwhelmed defendant with its many patent citations. In the face of such anticipation, plaintiff asserts it is puzzled to explain the action of the Patent Office in granting this patent. The intimation of the District Court, too, was that the conception of the apparatus required not even the ability of a skilled mechanic, but rather that of a mediocre artisan.

Yet hardly has plaintiff completed this argument when it asserts that *it* failed only by a few months to reach the Patent Office ahead of defendant with its application for a patent on a very similar apparatus. Naturally the question arises,— If claim 5 is so obviously invalid and is blocked so effectively by the prior art, what about the application of plaintiff filed a few months later, wherein it sought a patent for its similar combination? Are we to infer from this that the patent counsel view the Patent Office as a place where resistance is mild and yielding? And worse,—Are the inventors being duped by these public grants, under a big seal, which, though evidencing legal service, are, in fact, valueless? May counsel ethically assert patentability if he reaches the Patent Office first and unpatentability if he arrives later than his competitor? The practice of patent counsel to blow hot and cold, to vigorously attribute pioneer status to his client's discovery, only to immediately thereafter deny the validity because no inventive quality is disclosed when he finds another has beaten his client to the Patent Office with an application for a very similar product, is too often an embarrassing weakness in a patent counsel's argument.

We understand counsel's contention to be that a showing of a plurality of applications made about the same time for patents covering similar or near-alike combinations, evidences mechanical, rather than inventive skill. The argument has force, but it would be more effective if it came from one who did not assert patentable novelty of such combination when he felt himself the first inventor.

The prior art very greatly narrowed the field of inquiry. All elements were old. Many of them had been used together. This, of course, would not prevent a patentable combination—nor a valid patent—on these old elements in a new combination. It does, however, make our inquiry more precise, more limited.

An old question, raised by new facts, confronts us. Invention (patentable novelty) or mechanical skill,—which? This is the question. Our conclusion agrees with that of the District Judge. It is against the claim of invention.

Anneren may have labored as a creator, as an inventor. We must, however, judge him by his works. So judged, he wrought as a mechanic. Evidence of inventive genius is not manifest in his work.

The decree is affirmed.