## COLD METAL PROCESS CO. v. UNITED ENGINEERING & FOUNDRY CO.

### No. 5756.

Circuit Court of Appeals, Third Circuit.

Sept. 27, 1935.

Rehearing Denied Nov. 8, 1935.

Thomas G. Haight, of Jersey City, N. J., Hugh M. Morris, of Wilmington, Del., and Walter J. Blenko, John J. Heard, and John G. Frazer, all of Pittsburgh, Pa., for appellant.

Patterson, Crawford, Arensberg & Dunn and Brown, Critchlow & Flick, all of Pittsburgh, Pa., for appellee.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

This is an appeal from an order of the District Court refusing a preliminary injunction to restrain the defendant from prosecuting certain suits which it had brought in the Northern District of Ohio and in the Northern District of Indiana.

A. P. Steckel filed an application on June 30, 1923, for a patent for "a revolutionary advance in the art of rolling thin sheet metal." Steckel assigned this application to the plaintiff, the Cold Metal Process Company, hereinafter called "Cold Metal." On April 20, 1926, Biggert and Johnson filed a conflicting application which was assigned by them to the defendant, United Engineering & Foundry Company, hereinafter called "United." In order to avoid future trouble, the parties herein on June 20, 1927, entered into an agreement for a license from Cold Metal to United called the "1927 agreement." After providing for a "conference" between the parties "immediately" after its execution, the agreement provided:

"3. When and if such claim or claims to common subject-matter are granted in *any patent issued on Cold Metals' applica-* tions, Cold Metals shall grant to United a license to make, use and sell rolling mills under such claim or claims, which license shall be exclusive to United for 4-high hot mills and for 4-high cold mills, in which the major portion of the power required by a roll stand is supplied to the rolls directly and not through tension ex-

erted on the material for pulling it through the rolls; Cold Metals, however, reserving the right to make or have made for its own use and to use in its own plant or plants such hot and cold mills, and provided further that Cold Metal shall have the right to make, use, and sell, or to license others to make, use, or sell, such 4-high hot mills in combination with means for coiling the rolled strip between passes as described in the pending application of A. P. Steckel, Serial No. 198,915, filed June 15, 1927.

"4. Immediately after such conference and without waiting for such claims to be secured, the parties shall negotiate the payment to be made by United to Cold Metals for such license, when and if granted. If the parties cannot agree upon such payment, the matter shall be submitted to three arbitrators, whose majority decision shall be accepted as final by both parties. The three arbitrators shall be as follows:

"Marshall A. Christy, of Pittsburgh, Pa.,

"Rollin C. Steese, of Youngstown, Ohio,

"Charles H. Booth, of Youngstown, Ohio.

"In case any of the arbitrators cannot serve, another or other arbitrators may be selected by the parties, but in case the parties cannot agree on such substitute arbitrator or arbitrators, then the above named arbitrators shall select the substitute arbitrator or arbitrators."

On October 20, 1930, a patent, No. 1,799,195, for the invention disclosed in the application, was issued to Cold Metal.

United found itself embarrassed by the "1927 agreement." It discovered that the larger part of its business, the manufacture and sale of mill rolls, would be seriously and detrimentally affected, if it enforced the 4-high mill patent in the trade for the reason that its general machinery customers threatened to deal with its competitors and not to deal with it, if it enforced that contract. It took the position (in the face of its agreement that it would "immediately after such conference" negotiate for the payment of royalties) that it would not negotiate or arbitrate the question of royalties which it was to pay Cold Metal until the patent had been declared valid by a court of last resort.

United proposed a substitute agreement which would contain certain provisions desired by it and which would practically put the control of the patent in United, but Cold Metal declined to make such agreement.

Cold Metal believing that its patent was being infringed by United brought suit against it on March 7, 1931, in the District Court for the Western District of Pennsylvania, Equity No. 2506 (3 F. Supp. 120). Thereupon on October 28th of that year, United entered into a secret agreement with Mesta Machine Company, hereinafter called "Mesta," its chief competitor, wherein it referred to the suit against it by Cold Metal and its desire to secure help from Mesta for the defense of the suit. Mesta on its part agreed: That it would try to secure a license from Cold Metal; that it would grant a sublicense to United, if it secured a license; that if it failed, it would "use every reasonable effort" to induce Cold Metal to sue it, and that "if sued it will vigorously defend such suit with a view of invalidating said patent"; and that it would not acquire or take any license or right under the patent except such as it could grant to United. United agreed to grant a sublicense, to the extent that it could, to Mesta on the same royalties which it had to pay Cold Metal in case it secured a license under the patent, and further agreed not to acquire or take any license or right under the patent which it could not grant to Mesta. In other words, this agreement is evidence of a union or combination between United and Mesta, whereby they practically pooled their interests for the advantage of each other, and if need be, to the disadvantage of Cold Metal to the extent of "invalidating" the patent under which they hoped to secure mutual benefits if it was finally declared valid.

Cold Metal did not know of this secret agreement until it came out at the hearing in the proceedings by Cold Metal against United for a preliminary injunction in 1934 in equity suit No. 2506. Not only was the agreement not disclosed, but the situation, for which United was largely, if not altogether, responsible was misrepresented in that it complained about the condition for which it was wholly or in part responsible. In the proceedings in that case, United said that its competitors "were paying no attention" to the patent and treated it as invalid. When the matter was before this court on motion to dismiss the appeal [68 F.(2d) 564], United said:

"Competitors of United, before and since the issuing of these patents, without hesitation ignored the application and patent and

built 4-high roller bearing mills covered by the patents above referred to.

"The Mesta Machine Company, one of the largest rolling mill manufacturers, began building such mills in 1926, and at the date of trial had built between forty and fifty. E. W. Bliss Company had built ten mills."

It even offered to prove that Mesta was disregarding the patent and assumed that it was invalid. United was thus trying to take advantage of a situation which it had to a great extent secretly created and offered this situation as an excuse for not keeping its agreement with Cold Metal. Its defense of that suit was based upon the ground, first, that the patent was invalid, and, second, if valid, it was protected by the "1927 agreement." Its position was inconsistent and was designed to protect itself, at the expense of Cold Metal, upon the happening of either contingency; if the patent was held to be invalid, then it was protected by its agreement with Mesta and others, or if the patent was held to be valid, then it was protected by the "1927 agreement."

The conclusion is inescapable that United was playing fast and loose with Cold Metal. Its contract with that company was a mere "scrap of paper," except when it might be invoked against Cold Metal and for its own advantage. However, United did enter into agreements with other companies than Mesta by which it sought to avoid all the disadvantages which the "1927 agreement" would or could bring to it, while it was at the same time claiming an exclusive license under the agreement if the patent was held to be valid.

Pretending that it desired to have the patent declared valid, United brought suit against E. W. Bliss Company in the United States District Court for the Northern District of Ohio. That suit is predicated on the purchase of a mill by H. M. Naugle, one of United's directors. Cold Metal charged United with being hostile and alleged that this suit was collusive. Under the evidence in this case, Cold Metal had good ground to reach that conclusion. If United had honestly wanted to test the validity of the Steckel patent, it could easily have joined in the suit already brought in New Jersey, where immediate action could have been had before the District Judge and not a master. All the negotiations between the parties herein relating to this suit in Cleveland against the Bliss Company indicates that it is brought with the hope and intention that the patent, under which it purports to have the right to an exclusive license, be declared invalid, as was indicated in its secret agreement with Mesta. Suit was brought without written notice of the infringement to the Bliss Company. The Bliss Company aided United in equity suit No. 2506 and its counsel openly declared that it believed the patent to be invalid. The same counsel, and so far as is known, with the same belief, is representing United in the case against the Bliss Company in Cleveland, although Cold Metal has requested that he withdraw.

Cold Metal was requested by United to bring suit against the Continental Company and this it did in the District of Delaware immediately following the request and advised United of this fact. United thereupon notified Cold Metal that it proposed to bring suit against the Continental Company in Indiana and requested authority to join Cold Metal in the suit. Cold Metal neither consented nor refused to join, but requested information as to why a suit should be brought in Indiana when one was already pending in Delaware. Without answering this request, United brought a suit the same day the request was received and joined as party defendant the Illinois Steel Company, a prospective user of the mill (although the mill has never been built), and the Hubbard Steel Foundry Company, a wholly owned subsidiary of the Continental Company. Neither of these parties was given any notice prior to the suit of their alleged infringement. The same hostile counsel represents United in this suit. The Illinois Steel Company is a licensee of the Armco Company with which United had agreed that it would not bring any suits on this patent either against it or any of its subsidiaries.

On October 15, 1934, United brought suit in the Northern District of Ohio against Cold Metal on the ground that Cold Metal had asserted that United did not have a license.

The suit at bar was brought against United, among other things, to enjoin it from prosecuting the suits which it had brought against the E. W. Bliss Company and Cold Metal in the Northern District of Ohio, the Illinois Steel Company, Continental Roll & Steel Foundry Company, and

Hubbard Steel Foundry Company in the Northern District of Indiana; to settle and determine the scope of the "1927 agreement" and to determine, or have determined by reference to arbitrators or a master or otherwise, the amount due Cold Metal to date and to determine the basis for payments to be made by United in the future under the agreement.

The District Court heard the testimony, refused the motion for a preliminary injunction, and discharged the rule to show cause. The plaintiff appealed and says that the order should be reversed for two main reasons: (1) Because United does not have such an interest in the patent as enables it to maintain its bills of complaint in the suits filed, and (2) because under the circumstances the suits are improper, fraudulent, collusive, and not brought in good faith.

The reason, Cold Metal says, that United does not have the right to bring or maintain suits for the infringement of the patent in question is because the "1927 agreement" is not per se a license nor an agreement containing the material and necessary terms of a license.

The District Court, however, held that it constituted a license and that United, as licensee, had the right to maintain the suits in Ohio and Indiana. In support of its conclusion, it cited the cases of De-Forest Radio Telephone & Telegraph Co. v. United States, 273 U. S. 236, 241, 47 S. Ct. 366, 71 L. Ed. 625, which holds that no formal granting of a license is necessary in order to give it effect, and Keystone Type Foundry v. Fastpress Company (C. C. A.) 272 F. 242, 244, which holds that the result is the same whether the contract agrees to give a license or gives one.

But an agreement to grant a license upon definite and stipulated terms under a patent already issued, or only applied for, is quite different from an agreement to grant a license if and when a patent is granted, upon unknown terms which are to be settled by negotiation or arbitration when the proposed licensee refuses to negotiate or arbitrate for the "payment" or royalty in accordance with the agreement. United says that they are still negotiating, but it is evident that they are not except for the negotiations undertaken at the suggestion of the court made at the time of the argument, but they failed. It is clear that the minds of the parties have never met as to the terms of the proposed license. They had in mind the execution of a definite, formal agreement later which would contain the terms fixed by negotiation or arbitration. The agreement was not the contemplated license; if it was, what were its terms? There were none and there could be no license without them. As the court said in American Bentonite Corporation v. Clark Equipment Company (D. C.) 43 F.(2d) 392, 394, it lacks important elements which are usually contained in license agreements. "There is no provision determining territorial limitations, upon whom the burden of sustaining the patent rests, the effect of total or partial invalidity upon royalties already paid [which would have been true in the case at bar had the '1927 agreement' been carried out], the time for payment of royalties, the effect of nonpayment." Both parties contemplated that a formal license complete in all necessary terms would be granted in the future. A bill for specific performance in this case could not be maintained. A court could not enforce such a contract or license because there are no terms to enforce. American Merchant Marine Insurance Co. v. Letton (C. C. A.) 9 F.(2d) 799, 801; Horvath v. McCord Radiator & Manufacturing Co. (C. C. A.) 35 F. (2d) 640.

United itself has always taken the position that the contract is executory. In its contract with Mesta, for example, it said: "* * * The terms and conditions of such license are not fully defined in said agreement of June 20, 1927, and that the amount to be paid by United for such license is under the terms of said agreement left to arbitration, and is as yet not determined."

This same position was taken by it in its agreements with its customers.

Again in its answer in this case it said: "* * * And only if the Courts should hold that said patent No. 1,779,195 is valid and that the construction and use of mills manufactured and sold by defendant under said Biggert & Johnson patent are an infringement of said Steckel patent, then and in that case and only in that case defendant avers that said agreement of June 20, 1927, Exhibit 'A' hereto attached, is in full force and effect and enforcible by defendant, and that under said agreement defendant has a license from plaintiff which, among other things, is a license to manufacture, sell and use rolling mills embodying and utilizing

the invention claimed by plaintiff in its said patent."

Its idea seems to have been that it had an executory option which it might or might not exercise just as appeared advantageous or otherwise to it. But parties to an agreement may not invoke its protection to their advantage when they think it will be helpful and renounce it when they think it may be harmful. The contention by United that it is not required to fix the terms of the license by agreement or arbitration and operate under it in accordance with those terms until the patent has been declared valid by a court of last resort is in direct violation of the agreement and seems to have been born with the hope that before the terms were fixed, some court may by some procedure hold the patent invalid and release United from the obligations of the agreement.

In the two cases on which the court relied DeForest Radio Telephone & Telegraph Co. v. United States, 273 U. S. 236, 241, 47 S. Ct. 366, 71 L. Ed. 625; Keystone Type Foundry Co. v. Fastpress Co. (C. C. A.) 272 F. 242, the terms of the agreement were definite and the licensee had performed all the conditions precedent to the issue of a license, but in the case at bar United has not fulfilled any of the conditions imposed upon it by the agreement and these must be performed before a license can issue. Those cases do not support the conclusion of the District Court in this case.

The agreement, not being a license, either per se or equitable, will not support the bills or give United the right to prosecute or maintain the suits brought in Ohio and Indiana. Dueber Watch-Case Mfg. Co. v. Fahys Watch-Case Co. (C. C.) 45 F. 697; Kerr v. Southwick (C. C.) 109 F. 482; Milwaukee Carving Co. v. Brunswick-Balke Collender Co. (C. C. A.) 126 F. 171; Minerals Separation, Ltd., v. Miami Copper Co. (D. C.) 275 F. 572; American Bentonite Corporation et al. v. Clark Equipment Co. (D. C.) 43 F.(2d) 392; Rhodes-Hochriem Manufacturing Co. v. International Ticket Scale Corporation (D. C.) 57 F.(2d) 713.

■ That United does not presently have an exclusive license is dispositive of this case and we might rest our decision upon this ground alone, but there is another reason why United is not entitled to prosecute these suits: Cold Metal did not refuse to bring suits against infringers to test the validity of the patent. The first one was brought in the District of New Jersey against the American Sheet & Tin Plate Company and the second one was against the Continental Roll & Steel Foundry Company in the District of Delaware brought within ten days after it was notified by United that the Continental Company was infringing the patent. In view of these facts, under the principles announced in the cases of Memphis City v. Dean, 8 Wall. (75 U. S.) 64, 19 L. Ed. 326, and Independent Wireless Telegraph Co. v. Radio Corporation of America, 269 U. S. 459, 46 S. Ct. 166, 70 L. Ed. 357, United may not force Cold Metal into a defense of numerous, needless, questionable suits, nor may it thus force Cold Metal to intrust it to litigate the validity of the patent.

■ Cold Metal contends here, as it did below, that the suits brought by United are fraudulent, collusive, and not brought in good faith. On undisputed testimony, except the general denial of bad faith, the District Court did not sustain this contention. The court did say, however, that "while defendant (United) may have been guilty of fraud prior to the decree at No. 2506," in that court when the patent was held valid, the evidence did not establish fraud in bringing and prosecuting the suits in Ohio and Indiana by United.

In order to determine whether or not the suits were brought in good faith, it is necessary to consider the situation under which United brought the suits and its apparent object in doing so.

When these suits were brought, Cold Metal had already brought two suits, one in New Jersey and one in Delaware, and its interest as owner of the patent and its hope to receive royalties from it would have prompted it to prosecute them vigorously. On the other hand, the entrance into the "1927 agreement" by United had embarrassed it in its general machinery business and its customers threatened to buy from United's competitors unless it ceased to assert its rights under the agreement. Moreover, United had entered into agreements with others which practically rendered the "1927 agreement" useless and without profit to it. United has not offered, and apparently cannot offer, any evidence which shows that it would be of the slightest advantage to it to have the patent de-

clared valid. United and Mesta do about 95 per cent. of the business in the high hot and cold mills covered by the patent and United entered into agreements with Mesta and Armco whereby it was not to receive royalty from them over and above what it had to pay to Cold Metal and that it would endeavor to keep as low as possible the royalty which had to be paid to Cold Metal. United entered into the agreement with Mesta which provided that under a certain contingency Mesta would use every reasonable effort to have Cold Metal sue it and that it would vigorously defend the suit "with a view of invalidating said patent." How United could honestly enter into that agreement and now honestly say that it desires to have the patent declared valid seems to us inexplicable. Consistent with its position in the agreement with Mesta, United tried to have the patent declared invalid in suit No. 2506 in the lower court. Consistent also with that position and contrary to the "1927 agreement," United has refused to pay royalties under the patent until a court of last resort declares it to be valid.

The Ohio and Indiana suits were not brought by United to stop infringements, but to test the validity of the patent. These suits in view of the suits in New Jersey and Delaware are apparently useless unless they have some ulterior object to accomplish. They were hastily filed by attorneys hostile to the patent against friendly defendants without notice of infringement or application of the law as to statutory marking, which prevent recovery for infringement, and without giving Cold Metal any real opportunity to say intelligently whether or not it would join as a party plaintiff.

Under these circumstances, we are forced to the conclusion that United did not bring the suits in good faith for the honest purpose of having the patent declared valid, and the learned trial judge erred in finding to the contrary on undisputed testimony. The litigation of the validity of the patent manifestly should not be intrusted to United and the court abused its discretion in doing so. It should be restrained from prosecuting the suits which it brought in Ohio and Indiana.

Accordingly, the decree of the District Court denying the motion for a preliminary injunction is reversed with directions to allow the injunction and to proceed to dispose of the other questions raised in the case.