**COLD METAL PROCESS CO. v. UNITED ENGINEERING & FOUNDRY CO.**

No. 10307.

United States Court of Appeals,
Third Circuit.

Argued Dec. 8, 1950.

Decided June 8, 1951.

As Amended on Denial of Rehearing
Aug. 6, 1951.

Jo Baily Brown, Pittsburgh, Pa. (Patterson, Crawford, Arensberg & Dunn and Brown, Critchlow, Flick & Peckham, all of Pittsburgh, Pa., James S. Crawford, Paul N. Critchlow and Julian Miller, all of Pittsburgh Pa., on the brief), for appellant.

William H. Webb, Pittsburgh, Pa. (William Wallace, Booth, Pittsburgh, Pa., Clarence B. Zewadski, Detroit, Mich., Reed, Smith, Shaw & McClay, Pittsburgh, Pa., Whittemore, Hulbert & Belknap, Detroit, Mich., Webb, Mackey & Burden, Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH and KALODNER, Circuit Judges.

BIGGS, Chief Judge.

The appellant in this proceeding, United Engineering & Foundry Company, on March 28, 1949, filed a pleading denominated by it as a "Cross-Complaint" and "Ancillary" at Equity No. 2991, a suit originally filed on November 17, 1934 by The Cold Metal Process Co. against United in the court below. D.C., 92 F.Supp. 969. We will refer to it hereinafter as a "counterclaim".[1] By its counterclaim United sought injunctive relief against Cold Metal to prevent the latter from bringing or threatening to bring "any further suit for infringement of patents 1,779,195 and 1,744,016 * * * against any user of four-high roller-bearing mills purchased from United, the use of which falls within the scope of the license which United holds from Cold Metal * * * by virtue of the 1927 [license] contract * * *", and that Cold Metal account for moneys collected by it from users of the mills purchased from United within the scope of United's license contract and for other relief. On September 27, 1949 United moved for a preliminary injunction and on the same day Cold Metal filed a motion to dismiss the counterclaim under Rule 12(b), F.R.C.P. 28 U.S.C.A. The court below held that the counterclaim was not ancillary. It denied the motion for preliminary injunction and dismissed the counterclaim. See United Engineering & Foundry Co. v. Cold Metal Pr. Co., D.C., 92 F.Supp. 596. United has appealed.

Some history of the protracted litigation which has taken place between United and Cold Metal, as well as of the "license" which United holds from Cold Metal is required. Both Cold Metal and United had applications pending in the United States Patent Office for an improved rolling mill on June 20, 1927. The same counsel represented both applicants. When counsel became aware of the conflict they endeavored to withdraw from representation of the applicants[2] but were persuaded to continue. An agreement dated June 20, 1927, was made between Cold Metal and United which provided, inter alia, that, if certain claims in an application for a patent to the Commissioner of Patents of the United States were granted, Cold Metal would grant to United an exclusive license to make, use, and sell rolling mills which included four-high hot mills and four-high cold mills in which the major portion of the power was supplied to the rolls directly.[3] The agreement of June 20, 1927 was held by the court below[4] in No. 2991

---

1. The term "Cross-Complaint" is used by United to designate this paper. The designation is not one which finds sanction in the Federal Rules of Civil Procedure, 28 U.S.C.A. The pleading is in reality a "counterclaim".

2. See Cold Metal Process Co. v. United Eng. & Foundry Co., D.C., 3 F.Supp. 120 at page 126, findings of fact No. 65 and No. 66.

3. The contract is set out in full in note 1 cited to the text in the opinion of this court in Cold Metal Process Co. v. United Engineering & F. Co., 3 Cir., 107 F.2d 27, 28. Note the contents of paragraph 3.

4. See Cold Metal Process Co. v. United Engineering & Foundry Co., D.C., 83 F.Supp. 914. The opinion in this case was filed January 4, 1938 but apparently

and by this court[5] to be a "valid and subsisting contract" for an exclusive license to United from Cold Metal under patent 1,779,195. Patent 1,744,016, insofar as the record before us demonstrates, was not involved in the litigation.

The original proceedings at No. 2991, referred to in the first paragraph of this opinion, had been brought by Cold Metal against United to restrain United from prosecuting three infringement suits brought by United in other federal districts charging infringement of patent '195 and to rescind the contract of June 20, 1927, or, alternatively, to have determined the amount due Cold Metal from United as license fees under the contract. After January 4, 1938, the date of the filing of the opinion, the court below entered a decree in the cause.[6] On September 29, 1943, pursuant to the mandate of this court of June 15, 1939,[7, 8] the court below entered another decree in which the case was referred to a master to ascertain the amount due to Cold Metal from United under the 1927 agreement for mills sold by the latter. In substance it had been determined that United had an exclusive license from Cold Metal to make, use, and sell the four-high mills covered by the 1927 agreement and that United should pay royalties to Cold Metal in an amount to be determined by the court below. We

are informed by counsel that this accounting is still being proceeded with.[9]

On June 20, 1941 United filed a motion for leave to file a "Second Supplemental Answer and Counter-Claim". This motion was denied by the court below.[10] United prayed that no further proceedings be taken with respect to any payments due from United to Cold Metal as license fees by reason of Cold Metal's alleged unconscionable conduct in respect to certain transactions with steel companies named in the complaint, or, alternatively, that "no further proceedings be taken until patent ['195] has been held valid and has been enforced by a court of competent jurisdiction."[11] The court below decided that it was without power to grant the relief sought by United's second supplemental answer and counterclaim, basing its conclusion upon a very strict construction of our mandate. No appeal was taken.

■ The counterclaim filed by United on March 28, 1949 and referred to by it as an "Ancillary Cross-Complaint" demonstrates United's divided mind. The counterclaim pleads evidence, makes argument and is prolix. United also brings forward a fancy which it has advanced hopefully from time to time in the litigation, viz., that neither patent '195 nor patent '016 has been held valid by a court of last re-

---

was not sent to the West Publishing Company for publication until nearly ten years later.

5. See Cold Metal Process Co. v. United Engineering & F. Co., 3 Cir., 107 F.2d 27.

6. We cannot tell precisely what was adjudicated since the parties have not seen fit to include the decree in the record and the opinion of the court below is not clear as to the exact extent of the relief to be granted. The date of the decree is not given.

7. This modified in part and affirmed in part the judgment of the court below.

8. The reason for the delay does not appear from the record.

9. See also 92 F.Supp. 969.

10. See 43 F.Supp. 375.

11. In Cold Metal Process Co. v. United Eng. & Foundry Co., D.C., 3 F.Supp. 120, Cold Metal had sued United claiming that it was infringing patent '195. United had filed an answer asserting that the patent was invalid but, if the patent was valid, United had been licensed thereunder by the agreement of 1927. The court below held the patent to be valid but stated that the defense of license, viz., license under the 1927 agreement, was a valid defense. United appealed to this court. This court dismissed the appeal on the ground that a licensee was not in a position to contest the validity of the licensor's patent. Some confusion has resulted by reason of the dismissal of the appeal. A more reasonable course would have been to have affirmed the judgment of the court below. We presently dismiss an appeal only when we are without jurisdiction to entertain it.

sort in a suit against an infringer [12] and that therefore United does not have to pay royalties or license fees.[13] The issue of validity is not open to United for since United is licensed under the 1927 agreement it cannot attack the validity of a patent under which it is licensed. Cf. Scott Paper Co. v. Marcalus Co., 326 U.S. 249, 66 S.Ct. 101, 90 L.Ed. 47. On the other hand Cold Metal may not deny that United has an exclusive license under the 1927 agreement. These questions are closed insofar as Cold Metal and United and those in privity with them are concerned.

■ Cold Metal argues that United has failed to show that all of the acts of United's customers are within the purview of United's license under the 1927 agreement and that therefore United is not entitled to the relief sought by it by the counterclaim. But the allegations of the counterclaim are sufficient to demonstrate that it is ancillary to the main action at No. 2991 if the proof sustains the allegations. The counterclaim was dismissed by the court below and no evidence was offered under it. The allegations of the counterclaim must therefore be taken to be true.[14] It alleges that Cold Metal has sued and is threatening to sue United's customers who have purchased mills from United covered by the 1927 license. Whether this be so cannot

be determined except by proof and proper findings of fact and conclusions of law.

■ That an issue of fact is presented is made plain by Beeghly's affidavit in opposition to the motion for a preliminary injunction.[15] The statement in the affidavit that many of the agreements made by Cold Metal with users of four-high mills "do not even include patent No. 1,779,195 but cover only patent No. 1,744,016 and other patents of Cold Metal" supplies an inference that *some* of the agreements do cover mills included within the coverage of patent '195 and contains an express statement that some of the agreements cover mills within the purview of patent '016. While the affidavit denies that such user's operations are within the scope of any rights possessed by United under the 1927 agreement, this denial raises an issue of fact and is in contradiction to the allegations of the counterclaim and allegations of Dickinson's affidavit filed by United. Beeghly's statement that any money received by Cold Metal from corporations operating under patents '195 and '016 "have been voluntarily paid in recognition of the rights of Cold Metal and with full knowledge on the part of the licensees of the limited rights United has been held to have had under patent No. 1,779,195 by reason of the 1927 agreement", is meaning-

---

12. Cf. the opinions of this court in Cold Metal Process Co. v. Carnegie-Illinois Steel Corp., 3 Cir., 108 F.2d 322 and 115 F.2d 33.

13. In Cold Metal Process Co. v. United Engineering & F. Co., 3 Cir., 107 F.2d at page 31, Judge Buffington made the following statement: "The evidence indicates rather conclusively that it was the original intention of the parties that United should not pay royalties under the agreement until the patent had been declared valid by a competent court." Whatever the evidence may be we can perceive no reason why the parol evidence rule should be varied in respect to the 1927 agreement. The agreement is complete upon its face and is unambiguous.

14. We note that neither Cold Metal nor United has included in its appendix any evidence save that contained in conflicting affidavits filed in support of, or opposition to, United's motion for prelim-

inary injunction. Neither party has called to our attention any evidence presented at No. 2991.

15. Paragraph 16 of the Beeghly affidavit states:
"Cold Metal has not at any time by the filing of suits, threats of suits, charges of infringement, or otherwise, collected monies from others for operations by such others within the scope of any rights possessed by United. Many of the agreements do not even include patent No. 1,779,195 but cover only patent No. 1,774,016 and other patents of Cold Metal. Some of the agreements include patents Nos. 1,779,195 and 1,-744,016 and many other patents of Cold Metal but any monies received thereunder have been voluntarily paid in recognition of the rights of Cold Metal and with full knowledge on the part of the licensees of the limited rights United has been held to have under patent No. 1,779,195 by reason of the 1927 agreement."

less without further background of supporting facts. It must be borne in mind that allegations are not proof and though a motion to dismiss under Rule 12 may dispose quickly and properly of many such suits, such a motion cannot take the place of proof. The fact that United, until the filing of the counterclaim, insofar as the record before us shows, had not claimed any rights under patent '016, is not necessarily dispositive of the issue as to whether United has any rights thereunder. United may have delayed in asserting such rights and the defense of laches may be available to Cold Metal at this stage of the proceeding. In this connection see the decision of this court, sitting en banc, in Kane v. Union of Soviet Socialist Republics, 189 F.2d 303. Cf. Loverich v. Warner Co., 3 Cir., 118 F.2d 690, Topping v. Fry, 7 Cir., 147 F.2d 715, 718. See Rule 8(c), and 2 Moore's Federal Practice, 2d ed., p. 1694.

■■ So clearly is the subject matter of United's counterclaim ancillary to the proceeding at No. 2991 [16] that had the counterclaim matured when the original answer was filed, the counterclaim would have been "compulsory" within the purview of Rule 13(a) and had United failed to plead it, it could not subsequently have been maintained.[17] United's counterclaim grew out of the same "transaction" or "occurrence" which created Cold Metal's claim, viz., the 1927 agreement. If, as has been demonstrated, United must pay the equivalent of royalties or license fees to Cold Metal under the 1927 contract, and United has the equivalent of an exclusive license under the two patents within the purview

16. In view of our disposition of the appeal it is unnecessary to determine whether the counterclaim is ancillary to the suit at D.C., 3 F.Supp. 120.

17. United's counterclaim is not a compulsory one. The reasons for our conclusion include the following. The complaint at No. 2991 was filed by Cold Metal November 17, 1934. United answered on January 12, 1935. By this complaint, as we have stated, Cold Metal sought to enjoin United from prosecuting certain suits brought by United against Cold Metal and others in Ohio and Indiana to enforce United's rights as an exclusive licensee under the 1927 contract. This suit was resolved in United's favor by the court below, D.C., 9 F. Supp. 994 (January 28, 1935). But Cold Metal appealed to this court which on September 27, 1935 (rehearing denied November 8, 1935) held, 79 F.2d 666, that Cold Metal was entitled to enjoin United from prosecuting the Ohio and Indiana litigations. This court held in substance that United did not receive a license under the 1927 agreement. Cold Metal seems to take the position, contrary to fact, that in No. 2991 United did *not* assert its rights under the 1927 agreement and that it should have done so; that since it did not do so (in Cold Metal's asserted view), United should not now be permitted to maintain its present counterclaim.

To state Cold Metal's position is to refute it, for, as we have said, the very subject matter of the suit at No. 2991 was the rights of Cold Metal and United (and hence of their respective licensees and vendees) under the 1927 agreement. Both sides hotly pursued their contentions in that litigation.

If more were needed, in view of the actions pending in Ohio and Indiana on January 12, 1935, the exception of Rule 13(a), FRCP, in favor of other pending actions, would suffice to save United's position. See Rule 86, FRCP, 28 U.S. C.A. If old Equity Rule 30 be invoked, Note 1 to Rule 13(a) of the Advisory Committee on Rules, 28 U.S.C.A., is pertinent. The note states: "This [Rule 13 (a)] is substantially former Equity Rule 30, broadened to include legal as well as equitable counterclaims." We conclude that a court of equity, construing old Equity Rule 30 under the circumstances of the case at bar, would hold it to be equivalent, insofar as an equitable counterclaim is concerned, to Rule 13(a), FRCP.

On May 11, 1936, Cold Metal filed a supplemental bill of complaint and on November 21, 1936 United filed its answer to this pleading. On these dates United's license under the 1927 contract did not exist for this court had held that the 1927 contract did not confer a license on United. This condition persisted until the 1939 decision of this court, 107 F.2d 27, which reversed the prior erroneous ruling and held that United was an exclusive licensee under the 1927 agreement. Then, viz., on November 14, 1939, on denial of rehearing by this court, United became possessed of rights which it could litigate.

of the 1927 agreement, United would be entitled to counterclaim against Cold Metal for the sums, if any, which Cold Metal has received from users of four-high mills within the scope of the 1927 agreement.

 In making these statements we assume, of course, that United will be able to sustain the allegations of its counterclaim respecting the scope of the 1927 agreement.[18] Moreover, if, as we must assume, United's proof will support its pleading, United may be entitled to an injunction to restrain Cold Metal from suing or threatening suits against United's customers. Public policy demands that a multiplicity of suits be not maintained even by a party entitled to maintain them when one suit would suffice. If the allegations of United's counterclaim are proved Cold Metal is not entitled to maintain any suit against United's customers.

We do not state, however, that United is entitled to a preliminary injunction or to maintain the counterclaim. These are matters, along with the question of laches, to be considered by the court below upon remand.

 Our order will be one of remand but it will be made with some hesitancy since United has not thought of its problem or endeavored to work it out in terms of the Federal Rules of Civil Procedure.[19] It has made no motion under Rule 13(e) relating to supplemental pleadings which supplies an analogy to control the pleading in the instant case. In view of the fact that the original complaint and answer were filed some fifteen years before we conclude that United had no right to file its counterclaim without first securing leave from the court below to do so. This being so, we might affirm the judgment of the court below had that tribunal based its dismissal of the counterclaim upon such a ground. Instead the court below held that the counterclaim was not ancillary and dismissed it for this reason. The court below was in error in holding that the counterclaim was not ancillary. Cold Metal points out that the motion for preliminary injunction was denied and asserts that this is an adjudication of United's right to a preliminary injunction. But there is nothing in the opinion of the court below to show us why it took this step. The opinion is devoted largely to a discussion as to whether the counterclaim is ancillary and the opinion is open at least to the inference that the court below denied the motion for a preliminary injunction because it wrongly concluded the counterclaim was not ancillary.

We conclude that on remand the entire field should be open to the District Judge. Accordingly we will vacate the decree and will remand with the direction to consider the questions presented anew in the light of this opinion.

---

18. It would be idle to speculate at this stage as to whether if United does not have a claim analogous to a compulsory counterclaim under subparagraph (a) of Rule 13, it might not have a permissive counterclaim under subparagraph (b). See the provisions of subparagraph (e) which are deemed auxiliary to those of subparagraph (a) and (b). See 3 Moore's Federal Practice, 2nd. ed., pp. 85 et seq.

19. Neither apparently has Cold Metal considered the effect of the Rules.